UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**HEATHER K.,**

        **Plaintiff,**

                **Case No. 1:20-cv-3402**
    **v.**                    **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

        **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Heather K. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Acting Commissioner of Social Security denying Plaintiff's application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

## I.    PROCEDURAL HISTORY

On May 10, 2016, Plaintiff filed an application for benefits, alleging that she has been disabled since April 2, 2015. R. 80, 115, 209−12. The application was denied initially and upon reconsideration. R. 119−24, 126−28. Plaintiff sought a *de novo* hearing before an administrative

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

law judge. R. 129. Administrative Law Judge ("ALJ") Jennifer Pustizzi held a hearing on October 18, 2018, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 36−79. In a decision dated December 24, 2018, the ALJ concluded that Plaintiff was disabled within the meaning of the Social Security Act ("the Act") from her alleged disability onset date of April 2, 2015, through August 15, 2016, but that her disability ended on August 16, 2016, and she has not been disabled under the Act since that date. R. 10−25. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on February 6, 2020. R. 1−6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On October 5, 2020, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 14.[2] On October 6, 2020, the case was reassigned to the undersigned. ECF No. 15. The matter is now ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

(1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists

only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to

4

scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

## B.     Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §

5

404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in

the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was a younger individual on her alleged disability onset date. R. 18. Plaintiff met the insured status requirements under the Social Security Act through December 31, 2020. R. 14. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between April 2, 2015, her alleged disability onset date, and the date of the decision. *Id.*

At step two, the ALJ found that Plaintiff suffered from the following severe impairments from April 2, 2015, through August 15, 2016, the period during which Plaintiff was found to be disabled: dysfunction of the major joints (knees), right wrist injury/carpal tunnel syndrome, obesity, affective disorder, anxiety disorder, and ADHD. R. 15.

At step three, the ALJ found that, from April 2, 2015, through August 15, 2016, Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. *Id.*

At step four, the ALJ found that, from April 2, 2015, through August 15, 2016, Plaintiff had the RFC to perform light work subject to various additional limitations. R. 15–18. The ALJ also found that, from April 2, 2015, through August 15, 2016, this RFC did not permit the performance of Plaintiff's past relevant work as a hairstylist. R. 18.

At step five, the ALJ found that, from April 2, 2015, through August 15, 2016, considering Plaintiff's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that the claimant could

have performed. R. 18–19. The ALJ therefore concluded that Plaintiff was under a disability, as defined by the Act, from April 2, 2015, through August 15, 2016. R. 19.

However, the ALJ went on to consider whether Plaintiff was disabled beginning on August 16, 2016. R. 19–24. At step two, the ALJ found that Plaintiff had not developed any new impairment or impairments since that date. R. 19. Thus, Plaintiff's severe impairments were the same as those present during the period of disability. *Id.*

At step three, the ALJ found that, beginning on August 16, 2016, Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 19–21.

The ALJ found that Plaintiff's medical conditions improved as of August 16, 2016. R. 21. The ALJ also found that this medical improvement resulted in an increase in Plaintiff's RFC. *Id.*

At step four, the ALJ found that, beginning August 16, 2016, Plaintiff had the RFC to perform sedentary work with various additional limitations. R. 21–23. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a hairstylist. R. 23.

At step five, the ALJ found that, beginning August 16, 2016, a significant number of jobs—*i.e.*, approximately 29,000 jobs as a surveillance system monitor; approximately 18,000 jobs as a callout operator; approximately 9,000 jobs as an election clerk—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 24. The ALJ therefore concluded that Plaintiff's disability ended August 16, 2016, and she has not been disabled within the meaning of the Social Security Act since that date through the date of the administrative decision. *Id.*

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Acting Commissioner be reversed and remanded with directions for the granting of

benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 18; *Plaintiff's Reply Brief*, ECF No. 20. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 19.

## IV.    RELEVANT MEDICAL EVIDENCE

On August 30, 2016, Jay D. Patel, M.D., Plaintiff's treating family physician, completed a two-page, check-the-box and fill-in-the-blank form entitled, "Medical Opinion Re: Ability to Do Work-Related Activities (Mental)[,]" assessing Plaintiff's ability to perform work-related activities on a day-to-day basis in a regular work setting. R. 847–48. In assessing Plaintiff's mental abilities and aptitudes needed to perform unskilled work, Dr. Patel opined Plaintiff was unable to meet competitive standards[3] in her abilities to remember work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; make simple work-related decisions; ask simple questions or request assistance; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and be aware of normal hazards and take appropriate precautions; and that Plaintiff had no useful ability to function[4] in her abilities to maintain attention for two-hour segments; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others

---

[3] "Unable to meet competitive standards" was defined to mean that the patient "cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting." R. 847.

[4] "No useful ability to function" was defined as "an extreme limitation" such that the patient "cannot perform this activity in a regular work setting." R. 847.

without being unduly distracted; complete a normal workday and workweek without

interruptions from psychologically based symptoms; perform at a consistent pace without an

unreasonable number and length of rest periods; respond appropriately to changes in a routine

work setting; and deal with normal work stress. R. 847. In assessing Plaintiff's mental abilities

and aptitudes needed to perform semiskilled and skilled work, Dr. Patel further opined that

Plaintiff was unable to meet competitive standards in her abilities to set realistic goals or make

plans independently of others and deal with the stress of semiskilled and skilled work, and that

Plaintiff had no useful ability to function in her abilities to understand, remember, and carry out

detailed instructions. *Id.* Dr. Patel also opined that Plaintiff was seriously limited, but not

precluded,[5] in her abilities to interact appropriately with the general public; maintain socially

appropriate behavior; and adhere to basic standards of neatness and cleanliness; and that Plaintiff

was unable to meet competitive standards in her abilities to travel in unfamiliar places and use

public transportation. R. 848. According to Dr. Patel, Plaintiff could manage benefits in her own

best interest. *Id.* Dr. Patel went on to opine that, on average, Plaintiff's impairments or treatments

would cause her to be absent more than four days per month. *Id.*

## V.    DISCUSSION

Plaintiff argues, *inter alia*, that the ALJ erred when weighing Dr. Patel's opinions.

*Plaintiff's Memorandum of Law*, ECF No. 18, pp. 17−22; *Plaintiff's Reply Brief*, ECF No. 20,

pp. 7−9. This Court agrees. An ALJ must evaluate all record evidence in making a disability

determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The administrative decision

must include "a clear and satisfactory explication of the basis on which it rests" sufficient to

---

[5] "Seriously limited, but not precluded" was defined to mean that the patient's "ability to function
in this area is seriously limited and less than satisfactory, but not precluded. This is a substantial
loss of ability to perform the work-related activity." R. 847.

enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id.* at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

"'A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (3d Cir. 2001) (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the

record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(1)–(6). Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

Here, the ALJ found that medical improvement occurred as of August 16, 2016. R. 21. The ALJ also found that this medical improvement resulted in an increase in Plaintiff's RFC. *Id.*

12

At step four of the sequential evaluation, the ALJ went on to find that, beginning August 16, 2016, Plaintiff had the RFC to perform sedentary work "except she can occasionally handle, finger, and feel with the right dominant hand; and she can perform simple tasks." *Id*.[6] In reaching this determination, the ALJ, *inter alia*, assigned "little weight" to Dr. Patel's opinions, reasoning as follows:

> Jay Patel, M.D., opined that the claimant had no useful ability for most mental demands of work, and would be absent from work more than 4 days a month. Exhibit 15F at 1-2. This opinion is afforded little weight since the record does not support such profound limitations. A review of the record reveals that the claimant had ability to perform activities of daily living, care for her dog, and drive a motor vehicle.

R. 23.

Plaintiff challenges this evaluation and argues that the ALJ failed to consider the factors required by 20 C.F.R. § 404.1527(c), including Dr. Patel's status as a treating source, the nature of his treating relationship with Plaintiff, and the consistency of his opinions with other evidence in the record. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 21−22; *Plaintiff's Reply Brief*, ECF No. 20, pp. 9. Plaintiff also challenges the sufficiency of the reasons given for discounting Dr. Patel's opinions. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 21−22; *Plaintiff's Reply Brief*, ECF No. 20, p. 9. In response, the Commissioner argues that the ALJ properly considered Dr. Patel's opinions in accordance with the appliable regulations and that substantial evidence in the record supports the ALJ's assessment. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 19, pp. 19−21.

---

[6] In assessing Plaintiff's abilities from April 2, 2015, through August 15, 2016, *i.e*., the period during which Plaintiff was under a disability, the ALJ found that Plaintiff had the RFC to perform light work "except she could never handle, finger, or feel with the right dominant hand." R. 15.

13

Plaintiff's arguments are well taken. It is true that an ALJ, in evaluating the medical opinions in the record, "need not explicitly discuss each factor in his decision." *O'Neill v. Comm'r of Soc. Sec.*, 2019 WL 413539, at *6 (D.N.J. Jan. 31, 2019). However, the ALJ must explain her evaluation of the medical evidence sufficiently to permit the Court to meaningfully review whether her reasoning complies with the regulation's standards. *Samah v. Comm'r of Soc. Sec.*, 2018 WL 6178862, at *5 (D.N.J. Nov. 27, 2018). Here, the ALJ never discussed Dr. Patel's treatment notes when weighing his opinions and therefore did not even implicitly acknowledge Dr. Patel's status as Plaintiff's treating provider. R. 23.[7] Moreover, the ALJ did not explain how Plaintiff's "activities of daily living" (which were otherwise unidentified), caring for her dog, and driving a motor vehicle warrant assigning "little weight" to Dr. Patel's extensive limitations in Plaintiff's mental abilities, including limitations related to social interaction. *See id*. This Court therefore cannot determine whether the ALJ appropriately considered the regulatory factors. *See Williams v. Berryhill*, No. CV 17-0146, 2018 WL 6990917, at *12 (E.D. Pa. Oct. 30, 2018), *report and recommendation adopted*, No. CV 17-0146, 2019 WL 158301 (E.D. Pa. Jan. 10, 2019) ("Here, the court has no way of knowing if the ALJ considered the § 416.927(c) factors, or whether any of those factors impacted the ALJ's decision to give no weight to [treating psychiatrist] Dr. Levinson's opinion."); *Ortiz v. Berryhill*, No. CV 16-03591, 2017 WL 1499250, at *8, n.10 (E.D. Pa. Feb. 28, 2017), *report and recommendation adopted sub nom. Ortiz v. Colvin*, No. CV 16-3591, 2017 WL 1477666 (E.D. Pa. Apr. 25, 2017) ("Here, the ALJ

---

[7] Although the ALJ cited to three pages of Dr. Patel's notes when weighing the opinion of the consultative examiner, Theodore Brown, Jr., Ph.D., the ALJ did so only for the purpose of collecting Plaintiff's subjective statements about her activities of daily living, including her ability to care for her dog, work out, and drive a motor vehicle; the ALJ never expressly referred to Dr. Patel's findings upon his own examination. *Id*. (citing Exhibit 12F at 1 (R. 765); Exhibit 25F at 1, 5 (R. 959, 963).

failed to provide support for his determination to assign Dr. Hazbun's opinion limited weight. The opinion is bereft of any reference to the factors or any discussion of Ortiz's extensive treatment with Dr. Hazbun. This does not suffice under the regulations."). *Cf. Dombrowski v. Comm'r of Soc. Sec.*, No. 16-153, 2017 WL 3922882, at *2 (W.D. Pa. Sept. 7, 2017) ("An ALJ is not required to discuss each of the factors identified in Section 404.1527, so long as there is sufficient evidence that the ALJ considered those factors.") (citations omitted).

Next, as noted, the ALJ discounted Dr. Patel's opinions of mental limitations simply because Plaintiff "had the ability to perform activities of daily living, care for her dog, workout, and drive a motor vehicle." R. 23. However, as Plaintiff points out, *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 20–21; *Plaintiff's Reply Brief*, ECF No. 20, pp. 9–10, these activities do not appear to differ much, if at all, from Plaintiff's level of activity during the period of disability found by the ALJ, *i.e.*, April 2, 2015, through August 15, 2016. For instance, Plaintiff's mother reported in a Third Party Function Report dated July 6, 2016, that Plaintiff was able to walk the dog using her left hand, R. 272; Plaintiff was able to drive a car, R. 274; and Plaintiff tried to cook and clean using only her left hand, R. 273. Notably, the ALJ did not discuss or assess this Third Party Function Report. *See generally* R. 10–25. Based on this record, the ALJ has not explained her evaluation of the evidence and reasons for discounting Dr. Patel's opinions in a manner that would permit this Court to meaningfully review whether the ALJ's reasoning accords with the regulation's standards. *See Samah*, 2018 WL 6178862, at *5.

Moreover, it is unclear to what extent this error infected the ALJ's determination of Plaintiff's RFC for the period beginning August 16, 2016. R. 21–25. Thus, the Court cannot meaningfully review the ALJ's RFC finding for this period and determine whether substantial evidence supports that finding at step four. *See Murphy v. Comm'r of Soc. Sec.*, No. 1:19-CV-

20122, 2020 WL 7022746, at *6 (D.N.J. Nov. 30, 2020) ("The ALJ's reliance on this misconception, along with other unsupported mischaracterizations of Plaintiff's physical abilities . . . permeates the ALJ's decision. As stated above, these errors cannot be separated from the ALJ's analysis of other record evidence such that the Court may determine whether substantial evidence supports the ALJ's RFC analysis."). Similarly, the Court is unable to determine the extent to which the ALJ's flawed consideration of Dr. Patel's opinions regarding Plaintiff's mental limitations infected the ALJ's finding that medical improvement occurred as of August 16, 2016. R. 21.

Finally, the Court rejects the Acting Commissioner's suggestion that other evidence in the record supports the ALJ's consideration of Dr. Patel's opinions. The ALJ did not rely on this rationale in evaluating Dr. Patel's opinions. R. 23. The Acting Commissioner's *post hoc* rationalization in this regard must therefore be rejected. *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) ("Our review must also be based on 'the administrative record [that was] already in existence' before the agency, not 'some new record made initially in the reviewing court' or 'post-hoc rationalizations' made after the disputed action.") (quoting *Rite Aid of Pa., Inc. v. Houstoun*, 171 F.3d 842, 851 (3d Cir. 1999)); *Fargnoli*, 247 F.3d at 44 n.7 (3d Cir. 2001) (stating that a district court should not substitute its own independent analysis for reasoning not mentioned by the ALJ) (citations omitted); *Rhodes v. Comm'r of Soc. Sec.*, No. CV 18-0678, 2019 WL 1042532, at *6 (D.N.J. Mar. 5, 2019) ("The Court is only permitted to consider the ALJ's decision based on the rationale contained in that decision; the Court is not to consider hypothetical rationales, which may justify the ALJ's decision, but which were not in fact underlying the opinion in question.") (citation omitted).

This Court therefore concludes that the decision of the Commissioner must be reversed, and the matter must be remanded to the Commissioner for further consideration of the opinions of the treating physician, Jay D. Patel, M.D. Remand is appropriate, moreover, even if further examination of those opinions again persuades the Commissioner that Plaintiff is not entitled to benefits for the period beginning August 16, 2016. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").[8]

## VI.   CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

---

[8] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Patel's opinions, whether medical improvement occurred as of August 16, 2016, and the RFC for the period beginning August 16, 2016, the Court does not consider those claims. However, on remand the Court encourages the ALJ to address Plaintiff's mother's statements in the Third Party Function Report dated July 6, 2016, R. 267–78.

17

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  October 26, 2021                            _____*s/Norah McCann King*_____
                                                         NORAH McCANN KING
                                                   UNITED STATES MAGISTRATE JUDGE

18